Concurring opinion by Associate Judge EASTERLY at page 759.
*752 Fisher, Associate Judge:
For decades this court has used the Dyas/Frye test[1] to govern the admissibility of expert testimony. We now are sitting en banc to consider whether we should abandon that test in favor of the standards embodied in Rule 702 of the Federal Rules of Evidence. For the reasons explained below, we adopt Rule 702.[2]
I. The Factual and Procedural Background
The plaintiffs in these thirteen cases have sued numerous cell phone manufacturers, service providers, and trade associations, alleging that long-term exposure to cell-phone radiation causes brain tumors. Judge. Frederick H. Weisberg held four weeks of evidentiary hearings on the admissibility of the expert testimony offered by the plaintiffs.[3] He concluded that, based on the present record, “some, but not all, of Plaintiffs’ proffered expert testimony on general causation is admissible under the Frye/Dyas evidentiary standard,” but “most, if not all, of Plaintiffs’ experts would probably be excluded under the Rule 702/Daubert standard .... ”[4] Judge Weisberg then certified the following question of law for interlocutory appeal: “whether the District of Columbia should adopt Federal Rule of Evidence 702 (or a revised Frye standard) for the admissibility of expert evidence.” See D.C. Code § 11-721 (d) (2012 Repl.). We granted appellants’ motion for interlocutory review.[5]
II. Legal Analysis
Our role at this stage of the proceedings is limited, but consequential. It is not our task to affirm or reverse Judge Weisberg’s ruling.[6] For this reason, we will not attempt to duplicate his learned discussion of the underlying science or his extended summary of the testimony he heard. Instead, we must decide whether to change the legal standard that governs the admission of expert testimony.
A. The Dyas/Frye Test
In this jurisdiction, the admission of expert testimony has been governed by the legal principles set forth in Frye v. United States and Dyas v. United States, In the seminal case of Frye, the trial court excluded evidence that the defendant had *753 taken and passed an early form of a lie-detector test. 293 F. 1013. Upholding the ensuing murder conviction, the Court of Appeals of the District of Columbia articulated a test for admitting expert testimony. That test was thereafter widely adopted in federal and state courts:
Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is máde must be sufficiently establishéd to have gained general acceptance in the particular field in which it belongs.
Id. at 1014.
Later, in Dyas, we expanded upon Frye and adopted a three-part test for determining whether to admit expert testimony:
(1) the subject matter “must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman (2) “the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference mil probably aid the trier in his search for truth”-, and (3) expert testimony is inadmissible if “the state of the pertinent art or scientific knowledge does not permit a reasonable opinion to be asserted even by an expert.”
376 A.2d at 832 (quoting McCormick on Evidence, § 13 at 29-31 (E. Cleary, 2d ed. 1972)). “The third criterion [of Dyas] incorporates the ... Frye test, under which scientific testimony is admissible only if the theory or methodology on which it is based has gained general acceptance in the relevant scientific community.” (John) Jones v. United States, 990 A.2d 970, 977 (D.C. 2010).
“[BJecause expert or scientific testimony possesses an aura of special reliability and trustworthiness, the proffer of such testimony must be carefully scrutinized.” Ibn-Tamas v. United States, 407 A.2d 626, 632 (D.C. 1979) (internal quotation marks and citation omitted). However, under Dyas/Frye, this inquiry “begins—and ends—-with a determination of whether there is general acceptance of a particular scientific methodology, not an acceptance, beyond that, of particular study results based on that methodology.” Id. at 638; see also President and Directors of Georgetown College v. Wheeler, 75 A.3d 280, 291 (D.C. 2013) (“The third Dyas requirement focuses not on the acceptance of a particular conclusion derived from the methodology, but rather on the acceptance of the methodology itself.” (ellipsis, .brackets, and internal quotation marks omitted)).
“General acceptance. means just that; the answer cannot vary from case to case.” (Nathaniel) Jones v. United States, 548 A.2d 35, 40 (D.C. 1988). “If the technique has gained such general acceptance, we will accept it as presumptively reliable and thus generally admissible into evidence.” Id. at 39. As Judge Weisberg explained, under the Dyas/Frye test “the question of whether an expert used a particular generally accepted methodology correctly is not at issue when determining the ... admissibility” of the expert’s testimony. See, e.g., United States v. Porter, 618 A.2d 629, 636 (D.C. 1992) (“Any failure by the scientists to adhere to the appropriate procedure is, of course, a proper subject of inquiry, but does not raise an issue which implicates Frye.”).
B. The Daubert Trilogy
In 1993 the Supreme Court held that the “general acceptance” test had been super *754 seded by the Federal Rules of Evidence, which were enacted half a century after Frye was decided. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Accordingly, “[t]hat austere standard, absent from, and incompatible with, the Federal Rules of Evidence, should not be applied in federal trials.” Id. at 589, 113 S.Ct. 2786. Interpreting Rule 702, the “specific” rule governing expert testimony, the decision in Daubert in some respects relaxed traditional barriers to opinion testimony. Id. at 588, 113 S.Ct. 2786 (“[A] rigid general acceptance requirement would be at odds with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony.” (internal quotation marks omitted)). The Court emphasized, however, that “the trial judge must [still] ensure that any and all scientific' testimony or evidence admitted is not only relevant, but reliable.” Id. at 589, 113 S.Ct. 2786. Here, of course, the Court was referring “to evidentiary reliability—that is, trustworthiness.” Id. at 590, 113 S.Ct. 2786 n.9.
Therefore, when a party proffers expert scientific testimony, the trial court must make “a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.” 509 U.S. at 592-93, 113 S.Ct. 2786. Although it eschewed “a definitive checklist or test,” id. at 593, 113 S.Ct. 2786, the Court in Daubert did suggest factors to be considered, including whether the theory or technique has been tested, whether it “has been subjected to peer review and publication,” “the known or potential rate of error,” and “the existence and maintenance of standards controlling the technique’s operation.” Id. at 593-94, 113 S.Ct. 2786. “Finally, ‘general acceptance’ can yet have a bearing on the inquiry.” Id. at 594, 113 S.Ct. 2786. Nevertheless, the Court cautioned, the inquiry is “a flexible one.” Id. “The focus ... must be solely on principles and methodology, not on the conclusions that they generate.” Id. at 595, 113 S.Ct. 2786.
The Court made clear that it did not intend for the trial judge’s more refined gatekeeping role to displace the normal tools of the adversary system. “Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.” 509 U.S. at 596, 113 S.Ct. 2786. “[I]n practice,” however, “a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations.” Id. at 597, 113 S.Ct. 2786.
The Court also pointed out that Rule 702 does not operate in isolation. To perform the gatekeeping function, the trial court normally will apply Rule 104 (a) (preliminary questions, such as whether a witness is qualified or evidence is admissible); Rule 703 (the bases of an expert’s opinion); and Rule 403 (permitting the exclusion of relevant evidence “if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence”).[7] 509 U.S. at 592-95, 113 S.Ct. 2786. When discussing Rule 403, the Court endorsed *755 this explanation: “Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.” 509 U.S. at 595, 113 S.Ct. 2786 (quoting Hon. Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).
Expressing confidence “that federal judges possess the capacity to undertake this review [of expert testimony for evi-dentiary reliability],” 509 U.S. at 593, 113 S.Ct. 2786, the Court summarized:
“General acceptance” is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert’s testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.
Id. at 597, 113 S.Ct. 2786.
In two subsequent decisions, the Supreme Court refined its analysis in Daubert, now acknowledging that “conclusions and methodology are not entirely distinct from one another.” General Electric Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). “[Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.” Id. Thus, “[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.” Id. The abuse of discretion standard of review applies, regardless of whether the trial court decided “to admit or exclude scientific evidence.” Id.
“Daubert’s general holding—setting forth the trial judge’s general ‘gatek-eeping’ obligation—applies not only to testimony based on ‘scientific’ knowledge, but also to testimony based on ‘technical’ and ‘other specialized’ knowledge.” Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (quoting Fed. R. Evid. 702). Moreover,
the test of reliability' is “flexible,” and Daubert’s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.
Id. at 141—42, 119 S.Ct. 1167. In other words, “the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.” Id. at 152, 119 S.Ct. 1167. The objective of the gatekeeping requirement “is to make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.” Id.
Daubert and its progeny thus focus not only on methodology, as Frye and Dyas do, but also on the application of that methodology in a particular case. As the Court explained in Kumho Tire, “Rule 702 grants the district judge the discretionary authority, reviewable for its abuse, to determine reliability in light of the particular facts and circumstances of the particular case.” 526 U.S. at 158, 119 S.Ct. 1167. Applying this principle, the Court concluded in both Joiner and Kumho Tire that the trial court had not abused its discretion by excluding the proffered expert testimony. See Joiner, 522 U.S. at 146-47, 118 S.Ct. 512; Kumho Tire, 526 U.S. at 158, *756 119 S.Ct. 1167. It is thus fair to say that the impact of the Daubert trilogy has been mixed: These cases relax the initial barriers to the admission of expert testimony, but at the same time emphasize the trial judge’s robust gatekeeping function.
C. Rule 702, Amended
Although the Daubert trilogy represented the Supreme. Court’s construction of Rule 702, that rule and its commentary were in turn amended (in 2000) to reflect the Supreme Court’s guidance. Rule 702 (as amended stylistically in 2011) now provides:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence qr to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.
Fed. R. Evid. 702. In making our decision, we will focus on this articulation of the governing principles.
D. Why We Adopt Rule 702
The parties and amici have recommended three options for our consideration: (1) retain the Dyas/Frye test, by which we currently abide; (2) adopt Federal Rule 702, as amended to reflect the Daubert trilogy; or (3) craft a revised version of the Dyas/Frye test. There are many criticisms of the first two tests. On the one hand, critics of Dyas/Frye claim that it is antiquated and out-of-step with modern science. It avoids, even forbids, looking at the crucial question of whether the testimony offered in a particular case is reliable. Some say that Frye forces unqualified jurors to decide which scientific theories should be applied to the particular case. One court has concluded that Frye “is both unduly restrictive and unduly permissive.” State v. Coon, 974 P.2d 386, 394 (Alaska 1999). “[I]t excludes scientifically rehable evidence which is not yet generally accepted, and admits scientifically unreliable evidence which although generally accepted, cannot meet rigorous scientific scrutiny.” Id. at 393-94. Judge Weisberg also concluded that Frye “is not a good gatekeeper for inductive sciences such as epidemiology or psychology.”
On the other hand, Rule 702 and Dau-bert are faulted for producing inconsistent results, for making unqualified judges evaluate the work of scientists, and for invading the province of the jury. We acknowledge that following a uniform rule does not ensure uniform results. There are many trial judges and many types of science. Moreover, the criteria for determining reliability are flexible, and the decisions of trial judges are reviewed only for abuse of discretion. Some inconsistency is inevitable.
Having studied the matter at great length, Judge Weisberg expressed his own conclusion: “[A]t the risk of over-simplification[,] if a rehable, but not yet generally accepted, methodology produces ‘good science,’ Daubert will let it in, and if an accepted methodology produces ‘bad science,’ Daubert will keep it out; conversely, under Frye, as applied in this jurisdiction, even if a new methodology produces ‘good science,’ it will usually be excluded, but if an accepted methodology, produces ‘bad science,’ it is likely to be admitted.”
• Our choice boils down to this: Like the “general acceptance” test, Rule 702 is concerned with the reliability of the “princi- *757 pies and methods” applied by the expert. Fed. R, Evid. 702 (c). But Rule-702 (d) goes further and expressly requires the court to determine whether “the expert has reliably applied the principles and methods to the facts of the case.” We conclude that Rule 702, with its expanded focus on whether reliable principles and methods have been reliably applied, states a rule that is preferable to the Dyas/Frye test.[8] The ability to focus on the reliability of principles and methods, and their application, is a decided advantage that will lead to better decision-making by juries and trial judges alike.
We have considered revising the Frye test, as some jurisdictions have done,[9] but there are substantial benefits, to be gained from adopting a test that is widely used. See Johnson v. United States, 683 A.2d 1087, 1100 (D.C. 1996) (en banc) (noting “the advantage that uniformity with the federal rule and the vast majority of state rules affords for interpretation and application”). We can learn from the decisions of other courts which apply Rule 702 or its state counterparts. Nevertheless, we are not proceeding with any illusions that the cases are uniform or even consistent. Nor will the transition be easy. But we are not the first jurisdiction to make this change, and the Advisory Committee Notes to Rule 702 provide helpful guidance for applying the rule. Echoing sentiments from Daubert, 509 U.S. at 593, 113 S.Ct. 2786, we are confident that judges of the Superi- or Court, like their Article III counterparts, are fully capable of performing the gatekeeping function.
E. Applying Rule 702
Properly performing the gatekeeping function will require a delicate touch. “[T]he trial court’s role as gatekeeper is not intended to serve as a replacement for the adversary system.” Fed. R. Evid. 702 advisory committee’s notes to 2000 amendments (quoting United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi, 80 F.3d 1074, 1078 (5th Cir.1996)). But, as Joiner and Kumho Tire clearly demonstrate, the trial court will have the discretion (informed by careful inquiry) to exclude some expert testimony. The goal is to d.eny admission to expert testimony that is not reliable, but to admit competing theories if they are derived from reliable principles that have been reliably applied.
“When a trial court, applying [Rule 702], rules that an expert’s- testimony is reliable, this does not necessarily mean that contradictory expert, testimony is unreliable. [Rule 7Ó2] is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise.” Fed. R. Evid. 702 advisory committee’s notes to 2000 amendments. Indeed, we expect that many cases will feature expert witnesses espousing different views of the evidence. Their testimony will be tested by the adversary process and evaluated by the jury.
What about cases in which the experts on one side are in a distinct minority? That *758 may well raise a red flag, for “[w]hen a scientist claims to rely on. a method practiced by most scientists, yet presents conclusions that are shared by no other scientist, the [trial] court should be wary that the method has not been faithfully applied.” Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996) (cited in Fed. R. Evid. 702 advisory committee’s notes to 2000 amendments). But minority status is not a proxy for unreliability. The trial court still will need to determine whether the opinion “is the product of reliable' principles and methods[,] ..; reliably applied.” Fed. R. Evid. 702 (c), (d).
One considerable cost of adopting Rule 702 is that judges and lawyers will have to adjust to new rules. There will also be the question of what to do about types of expert testimony that have been commonly admitted under Dyas/Frye. Must this jurisdiction revisit the admissibility of every form of expert testimony? Both Daubert and the Advisory Committee Notes to Rule 702 provide some useful guidance.
There is no “grandfathering” provision in Rule 702. However, Daubert commented that “ ‘general acceptance’ can ... have a bearing on the [reliability] inquiry.” 509 U.S. at 594, 113 S.Ct. 2786. “Widespread acceptance can be an important factor in ruling particular evidence admissible, and a known technique which has been able to attract only minimal support within the community may properly be viewed with sképticism.” Id. (internal quotation marks and citation omitted). Moreover, “the trial judge has the discretion ‘both to avoid unnecessary “reliability”' proceedings in ordinary cases where the reliability of an expert’s methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert’s reliability arises.’” Fed. R. Evid. 702 advisory committee’s notes to 2000 amendments (quoting Kumho Tire, 526 U.S. at 152, 119 S.Ct. 1167). What the court may not do is reflexively admit expert testimony because it has become accustomed to doing so under the Dyas/Frye test.
Plaintiffs lament the enormous amounts of time and money that have been spent on discovery and pretrial litigation, and they fault defendants for agreeing to use the Dyas/Frye test in these cases. But the defendants could not have done otherwise because Dyas and Frye are binding precedent until revisited by this court sitting en banc. See M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C. 1971). It is also highly doubtful that we would have accepted an interlocutory appeal until we were presented with a developed record. See note 5, above.
Plaintiffs also argue that any new rule we adopt should not apply to these cases, but such an outcome would be inconsistent with the very purpose for entertaining an interlocutory appeal. See note 5, above. Judge Weisberg explained that if this court adopted a new rule governing the admissibility of expert testimony, he “could then allow whatever additional discovery might be necessary to place Plaintiffs in a fair position to litigate that issue.”
III. Conclusion
We adopt Rule 702 to apply to the trial of this case and to any civil or criminal case[10] in which the trial begins after the *759 date of this opinion. We will consider at a later time, when the issue is properly presented, whether the standard applies to cases that have already been tried but are not yet final on direct appeal. See generally Davis v. Moore, 772 A.2d 204 (D.C. 2001) (en banc). These cases are remanded for further proceedings consistent with this opinion.

It is so ordered.

. See Dyas v. United States, 376 A.2d 827 (D.C. 1977); Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

. In' the absence of legislation prescribing rules of evidence, "this court is the final authority for establishing the evidentiary rules for the Superior Court of the District of Columbia.” Laumer v. United States, 409 A.2d 190, 195 n.7 (D.C. 1979) (en banc).

. Judge Weisberg heard "testimony from plaintiffs’ eight experts and defendants’ four rebuttal experts, received approximately 280 exhibits containing thousands of pages of documents, and reviewed hundreds of pages of legal briefing both before and after the hearing.”

. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. The statute governing our jurisdiction permits an interlocutory appeal in a civil case when a judge of the Superior Court states in writing his or her opinion "that the ruling or order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the ruling or order may materially advance the ultimate términation of the litigation or case.” D.C. Code § 11-721 (d). This court may, in its discretion, permit the appeal to be taken. Id.; see also In re J.A.P., 749 A.2d 715, 717 (D.C. 2000).

. Appellants note that their appeal "does not challenge any specific findings related to a particular expert.” Brief for Appellants at 8.

. This court has adopted. Rule 703 (In re Melton, 597 A.2d 892, 901 & n.10 (D.C. 1991) (en banc)), and Rule 403 (Johnson v. United States, 683 A.2d 1087, 1100 (D.C. 1996) (en banc)). Although we have not formally adopted Rule 104, “it accurately states the rule of evidence we generally follow.” Jenkins v. United States, 80 A.3d 978, 991 (D.C. 2013).

. Our decision to adopt Rule 702 means, among other things, that we will no longer ask whether the subject matter is “beyond the ken of the average layman.” Dyas, 376 A.2d at 832. The proper inquiry is whether "the expert’s scientific, technical, or other - specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 (a).

. See, e.g., Blackwell v. Wyeth, 408 Md. 575, 971 A.2d 235, 241-43, 250-56 (2009); Cornell v. 360 West 51st St. Realty, LLC, 22 N.Y.3d 762, 986 N.Y.S.2d 389, 9 N.E.3d 884, 896-97 (2014); Betz v. Pneumo Abex LLC, 615 Pa. 504, 44 A.3d 27, 58 (2012).

. The United States Attorney's Office and the Office of the Attorney General for the District of Columbia prosecute the criminal cases that are heard in the Superior Court. The Public Defender Service represents the defendants in many of those cases. All three offices have filed briefs amicus curiae urging us to adopt Rule 702. No party or amicus has asked us to adopt a different rule for criminal cases.