Opinion for the court by Associate Judge Easterly. Dissenting opinion by Associate Judge Thompson, at page 196. Easterly, Associate Judge: Appellant Venlonte“V. Bethea appeals the Superior Court’s order denying 'his motion under D.C. Code §' 23-110 (2001)— alleging that he received ineffective assistance of counsel (IAC) at trial — without a hearing. Because we conclude that our well established presumption in favor of holding a hearing on all § 23-110 motions has not been rebutted, we reverse and remand for a hearing op his JAC claim. I. Mr. Bethea was convicted by a jury of conspiracy' to commit murder; four counts of assault with intent to kill while.armed; second-degree murder while armed; possession of a firearm during a crime of violence; carrying á pistol without a license; and carrying a dangerous weapon. Bethea v. United States, No. 04-CF-120, Mem. Op. & J. at 1, 2 A.3d 1093 (D.C. Aug. 9, 2010). On direct appeal, this court affirmed all of his convictions. Id. Mr. Be-thea also sought to collaterally challenge his convictions by filing a § 23-110 motion in which he alleged that he possessed newly-discovered, exculpatory evidence and that his trial counsel, had provided him with ineffective assistance.[1] But, because this motion was filed prior to Mr. Bethea’s sentencing in 2004, the trial court ruled it was not yet ripe and dismissed it.[2] Post-trial counsel did not re-file the § 23-110 motion after sentencing. Mr. Bethea was appointed appellate counsel in 2004; appellate counsel moved in 2009 (but still during the pendency of Mr. Bethea’s appeal) to “adopt” the previously dismissed § 23-110 motion and to “issue stay [sic] pending further investigation and the possible filing of a supplement to the ineffective assistance motion.”[3] Appellate counsel never filed a supplement, never moved to lift the stay, and never obtained a ruling on this motion. In 2015, post-trial counsel, whom the trial court reinstated for reasons not reflected in the record, filed the § ,23-110 motion that is the subject of this appeal, apparently reiterating the same claims as were raised in the previously filed motions.[4] The trial court denied Mr. Be-thea’s § 23-110 motion without a hearing. While acknowledging that there is a presumption in favor of holding a hearing on all § 23-110 motions, see Ramsey v. United States, 569 A.2d 142, 147 (D.C. 1990), tile trial court determined that Mr, Be-thea’s motion fell within the narrow exception that allows a trial court to rule on a motion summarily if it finds “that under no circumstances could the petitioner establish facts warranting relief.” Pettaway v. United States, 390 A.2d 981, 983-94 (D.C. 1978). As the trial court noted, this exception encompasses three categories of claims: those that “(1) are palpably incredible; (2) are vague and conclusory; or (3) even if true, do not entitle the movant- to relief.” White v. United States, 146 A.3d 101, 109 (D.C. 2016) (quoting Hardy v. United States, 988 A.2d 950, 961 (D.C. 2010)). The trial court placed this case into the third category, determining that “defendant’s claim would warrant no relief even if it were true.”[5] We review a trial court’s decision to deny a § 23-110 petition without hearing- for abuse of discretion. Lane v. United States, 737 A.2d 541, 548 (D.C. 1999); see also Bellinger v. United States, 127 A.3d 505, 514-15 (D.C. 2015) (“While the decision-whether to hold an evidentiary hearing on a § 23-110 collateral challenge to the constitutionality of a conviction is co'm-mitted to the-trial court’s-discretion, the extent of that discretion -is quite narrow.” (internal quotation marks omitted)). Although the- trial court identified a legitimate ground for denying a § 23-110 petitioner a hearing — namely, that appellant’s claim would warrant no relief even if it were true — -we conclude that the trial court here abused its discretion by denying the petition summarily. The trial court began its -analysis by assessing the likely prejudice that Mr. Be-thea suffered from his trial counsel’s failure to call David Norwood, a witness who — according to the § 23-110 motion and the affidavit of Mr. Norwood (attached to the § 23-110 motion) — would have significantly impeached Wendy Barksdale, a key government witness at trial.[6] Ms. Barksdale claimed to have seen the shooting from the window of Mr. Norwood’s apartment, and she testified that, from this vantage point, she had “no doubt” that she had seen “[Mr.] Bethea fire a gun into the driver’s side window of a car.” Bethea, No. 04-CF-120, Mem. Op. & J. at 2. Mr. Nor-wood stated in his affidavit, however, that Ms. Barksdale could not have been watching from the window of his home. Mr. Norwood elaborated that, on the day of the murder, he “left home at approximately 7:00 AM and return[ed] to [his] home at 7:00 PM” and “[t]here is no way physically possible for Ms. Wendy Barksdale or [him] to have been in [his] residence during the hours specified.”[7] The court assumed, without explanation, that Mr. Norwood’s testimony would have been as “vague” and “devoid of practically any detail[ ]” as his affidavit. Preliminarily, we view Mr. Norwood’s affidavit differently. Although it does not say it explicitly, this affidavit clearly implies that Ms. Barksdale was not at his-home when he left in the morning nor when he returned in the evening, that he locked the door to his residence, that Ms. .Barksdale did not have a key, and that he had no reason to believe ,Ms. Barksdale ■ had any other means of accessing his home. This much can be readily inferred from Mr. Nor-wood’s clear statement that “[t]here is no way physically possible for Ms. Wendy Barksdale ... to have been at [his] residence ..,Moreover, in making the assumption that Mr, Norwood’s testimony would have mirrored his affidavit, the trial court failed to recognize that, at a hearing, Mr. Norwood would be questioned by counsel for both Mr. Bethea and the government, and his assertions in his affidavit could be expanded upon — and, further, that he might not be the only witness called to testify. (It seems likely that Mr. Bethea and/or his trial counsel, would also have testified at a § 23-110 hearing, as Mr. Bethea’s IAG claims make relevant both his -communications with his trial counsel and any investigation by counsel related to Mr. Norwood.) By making assumptions about what testimony would be elicited and then assessing Mr. Bethea’s underlying Strickland claim in light of those- assumptions, the trial court conflated the procedural question of whether there is a reason to deny petitioner a hearing on his motion with the distinct merits question of whether the petitioner’s claims warrant relief (once all evidentiary questions have been resolved, typically through a hearing). Separating the procedural question from the merits question, we conclude that the presumption in favor of granting Mr. Be-thea a hearing was not rebutted. Mr. Nor-wood’s affidavit alleged specific facts that indicate that counsel provided ineffective assistance by failing to call a witness who could have testified that the government’s sole eyewitness to the murder could not have seen what she said she saw. Accordingly, it cannot be said' that “under no circumstances could [Mr. Bethea] establish facts warranting relief.” Ramsey, 569 A.2d at 147. Because we conclude that the presumption in favor of holding a hearing on claims brought under § 2.3-110 has not been rebutted, we reverse and remand for further proceedings consistent with this opinion. So ordered. . It is unclear if Mr. Bethea filed this motion pro se or through counsel appointed to him after he was found guilty but before he was sentenced ("post-trial counsel”). This initial motion is not in our record on appeal, but the trial courf — in denying the motion currently before us — indicated that it was filed pro se, whereas other filings in our record indicate that it was filed by post-trial counsel. . See Junior v. United States, 634 A.2d 411, 417 (D.C. 1993) ("[A] motion ... filed before appellant was sentenced [cannot be] characterize[ed] ... as [a] post-sentence § 23-110 [motion].”). . In that motion, appellate counsel represented that post-trial counsel had "indicated that he had lost Mr. Bethea’s file.” . We do not infer from this sequence of events that Mr. Bethea or his counsel perceived it necessary to supplement the infer-mation presented in his first two motions in order to support and obtain a hearing on his claim of ineffective assistance. Cf. infra p. 198. Nor cap we infer that they were, or with further investigation would have been, unable to supplement the information provided. .The trial court characterized the affidavit attached to the motion as vague and discussed all of the details that it was missing. We do not understand the trial court to have been explaining, in the alternative, that it was denying Mr, Bethea's motion on the grounds that it was "vague and conclusory,” nor would such a ruling be supported by the record. Mr. Bethea’s § 23-110 motion clearly states the basis of his claim — ineffective assistance of counsel — and the manner in which he believes trial counsel provided that ineffective assistance. It is neither vague, nor con-clusory. . Ms. Barksdale testified reluctantly. In fact, the government indicated that she was a "heavy crack user and a dealer of crack cocaine ... [who] only testified after being arrested on a material witness warrant.” Be-thea, No. 04-CF-120, Mem. Op. & J. at 2 n.3. . The record before us is not clear regarding the exact time at which the murder occurred; The government indicates that the shooting happened "[s]ometime after 6:00 pm,” on September 21, 1998. But it has not argued that Mr. Norwood's affidavit does not cover the time-frame at which the murder occurred, and the trial court’s ruling makes no mention of the timing. Therefore, in this opinion, we assume that the time of the shooting was within the timeframe described by Mr. Nor-wood’s affidavit — i.e. between 6:00 PM and 7:00 PM. We additionally note that in a letter also attached to the motion, Mr. Norton asserts that Wendy Barksdale was not in his home at "any time” on September 21, 1998.