*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 15-CT-187 & 17-CT-54

ARTHUR LEE DICKERSON, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

FILED **04/19/2018**
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeals from the Superior Court of the
District of Columbia
(CTF-4444-14)

(Hon. Ann O'Regan Keary, Trial Judge)
(Hon. Jennifer M. Anderson, Post-Trial Judge)

(Submitted January 13, 2017          Decided April 19, 2018)

*Thomas W. Ullrich* was on the brief appellant.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, *Rosalyn Calbert Groce*, Deputy Solicitor General, and *John D. Martorana*, Assistant Attorney General.

Before MCLEESE, *Associate Judge*, and WASHINGTON[*] and NEBEKER,[**] *Senior Judges*.

---

[*] Judge Washington was Chief Judge at the time of submission. His status changed to Senior Judge on March 20, 2017.

[**] Senior Judge Reid was originally assigned to this case. Following her retirement on December 12, 2017, Senior Judge Nebeker was assigned to take her place on the division.

WASHINGTON, *Senior Judge*: Following a bench trial, appellant Arthur Lee Dickerson was found guilty of Driving Under the Influence of Alcohol or a Drug ("DUI").[1] On appeal, appellant contends the trial court abused its discretion in preventing his toxicologist from testifying as an expert in field sobriety tests and giving an expert opinion as to the adverse effect appellant's purported pinched nerve may have had on his performance of two balance field sobriety tests. He further challenges the trial court's failure to hold a hearing prior to denying his motion for a new trial under D.C. Code § 23-110 (2012 Repl.), that alleged ineffective assistance by his trial counsel for failing to secure and present the testimony of his treating physician. Finding no error, we affirm his conviction.

## I.

On March 15, 2014, around 3:21 a.m., Officer Seth Carll of the United States Capitol Police observed appellant's vehicle driving waveringly, prompting Officer Carll to follow appellant. While following, he witnessed appellant's white Lexus cross over and straddle the dividing white lane hash marks, make an abrupt stop at a red light inside the crosswalk, travel slowly through a yellow light, and

---

[1] D.C. Code § 50-2206.11 (2012 Repl.).

cross over the solid yellow line into oncoming traffic. After Officer Carll activated his emergency lights, appellant traveled for another half-block, scraping his passenger side tires against the curb as he pulled over.

Officer Carll approached the driver side door and saw that appellant's eyes were bloodshot and watery. When asked how much he had to drink, appellant initially told Officer Carll that he had only one drink, but later said he had three drinks between 6:00 and 9:00 p.m. Officer Carll testified he could "smell a strong odor of alcohol coming from [appellant's] breath and person." When asked for his driver's license and registration, appellant produced his license from his wallet but overlooked his registration, which was visible to Officer Carll in appellant's wallet. Finally, Officer Carll asked appellant what time he believed it was, and appellant responded that it was around midnight rather than the actual time of 3:20 a.m.

Following his initial encounter, Officer Carll attempted to have appellant perform three field sobriety tests: the horizontal gaze nystagmus ("HGN"), the walk-and-turn, and the one-leg stand tests. Officer Carll administered the HGN test first. He identified "six clues" from appellant's test, where, "[b]ased on [his] training manuals, four or more clues indicates that there's a 77 percent likelihood that the defendant's blood alcohol content is a .10 or above." For both the walk-

and-turn test and the one-leg stand test, appellant had difficulty following the directions provided to him and failed to complete the tests as required.

Prior to the administration of these tests, appellant informed Officer Carll "he had a pinched nerve in his back and that he was taking Xanax, Gabapentin, and Ambien." Officer Carll acknowledged on cross-examination that the National Highway Traffic Safety Administration ("NHTSA") Manual states that a person with a back injury may have difficulty performing the two balance tests appellant was asked to perform.

Following the field sobriety tests, Officer Carll believed appellant was under the influence of alcohol, given the "totality of the circumstances," and placed appellant under arrest. Appellant was transported to Capitol Police headquarters, where he reportedly became uncooperative. Officer Christopher Leonard attempted to administer an intoxilyzer test, a breathing test that detects the presence of alcohol. Appellant failed to complete the test after seven attempts. Officer Leonard then informed appellant that if he could not "provide a breath sample, he ha[d] the option of providing urine." Appellant "wasn't able to provide a urine sample either" and Officer Leonard explained "at that point, it became a refusal." Officer Leonard also testified that while he was administering the

intoxilyzer test, he noticed "a strong odor of alcohol" and that, in his opinion, appellant was "under the influence of alcohol."

Following the submission of the government's case, appellant sought to elicit the testimony of Richard McGarry. He attempted to qualify McGarry as an expert in toxicology, pharmacology, and field sobriety tests. The trial court, however, declined to accept McGarry as an expert in the administration and interpretation of field sobriety tests as he had "no specific training in the performance of the field sobriety tests," but permitted him to testify as an expert in toxicology and pharmacology. The court also declined to allow McGarry to give an opinion that appellant's pinched nerve affected his performance of the two balance field sobriety tests.

At the end of a three-day trial, the trial court found appellant guilty of DUI. The court found that the government met its burden, based on the totality of the circumstances, that appellant was under the influence of either alcohol or prescription medication. The court credited Officer Carll's testimony that appellant made multiple driving violations, had a strong odor of alcohol emanating from him, had bloodshot and watery eyes, made inconsistent claims of alcohol consumption, had difficulty producing his registration, and was uncertain as to the

time of day. The court also credited Officer Carll's opinion that appellant was under the influence, as well as Officer Leonard's corroboration of that opinion. Finally, the court found that the police station video corroborated the officers' testimony that appellant was combative, talkative, and argumentative at the station, and that appellant refused to sign papers.

The trial court sentenced appellant to 180 days of incarceration, but suspended execution of the sentence, placing him instead on twelve months of supervised probation. He timely filed his direct appeal. While his direct appeal was pending, appellant filed a § 23-110 motion alleging ineffective assistance of trial counsel. The basis of appellant's ineffective assistance claim was the failure of his trial counsel to present the testimony of his treating physician, Dr. Vijay Shri Kannan. The trial court denied the § 23-110 motion without a hearing. This appeal followed and we consolidated the two appeals.

## II.

We review a trial court's admission or exclusion of expert testimony for abuse of discretion and only disturb the lower court's ruling when it is "manifestly erroneous." *Benn v. United States*, 978 A.2d 1257, 1273 (D.C. 2009). We have

cautioned, however, that "the defense should be free to introduce appropriate expert testimony" and "should not be put at a disadvantage in the use of scientific evidence comparable to that permitted to the government." *Id.* at 1269-70. Still, we "defer to the trial court's exclusion of expert testimony when it is based on a reasoned and reasonable exercise of discretion." *Girardot v. United States*, 92 A.3d 1107, 1109 (D.C. 2014) (quoting *Benn*, 978 A.2d at 1276) (brackets omitted). Though the trial court's ruling is discretionary, the trial court must "take no shortcuts" and "exercise its discretion with reference to *all* the necessary criteria." *Id.* (quoting *Ibn-Tamas v. United States*, 407 A.2d 626, 635 (D.C. 1979)) (emphasis in original). "Thus, the court's determination must be case-specific[ and] based on the proffered expert testimony . . . ."[2] *Id.* (internal quotation marks

---

[2] Appellant's trial preceded our en banc decision in *Motorola Inc. v. Murray*, 147 A.3d 751 (D.C. 2016). In *Motorola*, we adopted the reliability standard of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-95 (1993), thereby replacing the general acceptance test articulated in *Frye v. United States*, 293 F. 1013 (D.C. 1923), and *Dyas v. United States*, 376 A.2d 827 (D.C. 1977). *Id.* at 756-57. Rule 702 now requires that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of

(continued…)

omitted). "While a witness may be qualified to testify as an expert on the basis of his experience in a particular field, a trial judge is not obliged to qualify a proffered expert when there are articulable reasons to doubt his competency." *Johnson v. District of Columbia*, 728 A.2d 70, 74 (D.C. 1999) (quoting *Glorious Food, Inc. v. Georgetown Prospect Place Assocs.*, 648 A.2d 946, 948 (D.C. 1994)).

## A. Field Sobriety Tests

Appellant first argues the trial court erroneously found McGarry was not qualified to testify as an expert in the area of field sobriety tests. More specifically, appellant contends the trial court erred in finding that McGarry did not possess sufficient skills, knowledge, or experience in field sobriety tests to aid the triers of fact in their search for truth. *See Motorola Inc. v. Murray*, 147 A.3d 751, 756 (D.C. 2016) (en banc). Had McGarry been qualified, appellant contends, he would have disputed and discredited Officer Carll's administration of the field sobriety tests.

---

(…continued)
　　　 the case.

Though the question of whether the *Daubert* standard applies retroactively to cases that have already been tried but are not yet final on direct appeal was left open in *Motorola*, we need not answer that question in this case. Under either standard, appellant's arguments fail.

"Whether a witness possesses the requisite qualifications to express an opinion on a particular subject is within the trial court's discretion," *Jung v. George Washington Univ.*, 875 A.2d 95, 105 (D.C. 2005) (quoting *Otis Elevator Co. v. Tuerr*, 616 A.2d 1254, 1256 (D.C. 1992)), "and its ruling thereon will not be reversed unless manifestly erroneous," *Austin v. United States*, 64 A.3d 413, 426 (D.C. 2013) (internal quotation marks omitted). Applying this deferential standard, we discern no manifest error in the trial court's conclusion that McGarry lacked the necessary skills, knowledge, and experience to testify as an expert in the administration and interpretation of field sobriety tests.

The trial court recognized that McGarry had some experience administering the HGN test through various continuing legal education programs he hosted in the 1980's and 90's. However, he testified that he had never demonstrated the HGN test "under supervision of anyone formally trained" in administering the HGN test, he was never formally trained or certified in administering HGN tests, nor had he ever personally witnessed an HGN test administered in a standard law enforcement scenario. Rather, "[h]e studied the NHTSA manual and decided how to perform [the HGN tests] and how to interpret them based on that." While "[t]he relevant knowledge for eligibility to testify as an expert may be based on experience," we

agree that that experience must be based on more than one's own interpretation of the standard NHTSA manual used in administering HGN tests. *Id.* We, therefore, cannot say the trial court abused its discretion in precluding McGarry from rendering an opinion on the administration and interpretation of the HGN test. *Cf. Karamychev v. District of Columbia*, 772 A.2d 806, 811 (D.C. 2001) (no abuse of discretion in finding police officer qualified to testify as an expert in the administration and interpretation of HGN tests where officer explained purpose of HGN test, discussed the one-week training course he received, and "estimated that since the training course, he had made two to three arrests per week for drinking and driving").

Appellant further asserts that had McGarry been qualified as an expert in field sobriety tests, he would have been able to testify to the effects of the prescription medicines appellant was taking on those tests. Appellant, however, failed to lay any foundation from which the trial court could determine that McGarry would have been able to opine about whether appellant's purported prescription medications *caused* the "six clues" seen by Officer Carll during the administration of appellant's HGN test. Implicit in the requirement that an expert have sufficient skill, knowledge, or experience in a particular field for which he is giving an opinion is that the "expert must have a reliable basis for his theory

steeped in fact or adequate data, as opposed to offering a mere guess or conjecture." *Russell v. Call/D, LLC*, 122 A.3d 860, 867 (D.C. 2015) (quoting *Perkins v. Hansen*, 79 A.3d 342, 345 (D.C. 2013)) (brackets omitted). Accordingly, "[e]xpert testimony may be excluded when the expert is unable to show a reliable basis for their theory." *Id.* (quoting *Haidak v. Corso*, 841 A.2d 316, 327 (D.C. 2004)).

The trial court recognized that appellant offered no non-hearsay evidence as to what prescription medications appellant ingested, the dosage of those medications, or the last time the medications were taken other than Officer Carll's testimony regarding appellant's statements prior to the field sobriety tests. Appellant did not proffer any blood tests, medical records, or testimony from which his expert could have shown a reliable basis for believing that appellant's prescription medications, rather than his being under the influence of alcohol or drugs, caused the nystagmus Officer Carll observed. Moreover, McGarry acknowledged that while he could observe nystagmus, he could not "say what caused the nystagmus." Without this evidentiary foundation, we agree that McGarry could not have opined as to the cause of appellant's nystagmus in the

HGN test.[3]

Moreover, McGarry was permitted to testify as to possible alternative causes for nystagmus, irrespective of how appellant's test was performed. He testified that Gabapentin and Xanax were alternative sources of HGN, but that he did not believe appellant took a sufficient quantity of Ambien for it to be a factor. McGarry also disagreed with the proposition that the presence of nystagmus necessarily meant that a person was under the influence of alcohol or drugs or that a person was impaired, explaining that while a drug like Gabapentin may cause nystagmus, it does not automatically mean that it would impair someone's driving skills. Bearing in mind the absence of a foundation and McGarry's actual testimony, we are satisfied that the trial court did not abuse its discretion in limiting McGarry's expert testimony.

## B. Pinched Nerve

Appellant next challenges the trial court's limitation on his expert's

---

[3] Officer Carll did not testify that appellant's consumption of alcohol or drugs caused the "six clues" he observed in the HGN test; rather Officer Carll testified that "[b]ased on my training manuals, four or more clues indicates that there's a 77 percent likelihood that the defendant's blood alcohol content is a .10 or above."

testimony regarding the effect that appellant's lower back pinched nerve had on his ability to perform the two balance field sobriety tests. It is undisputed that McGarry's education, training, and experience were in toxicology and pharmacology, and the court properly qualified him to render an opinion in those fields. *See Motorola Inc.*, 147 A.3d at 756. Although McGarry completed anatomy, physiology, and pathology courses in the 1960s while obtaining his bachelor and master degrees, those courses alone do not qualify him as someone who possesses the skills, training, and experience necessary to diagnose a lower back pinched nerve and opine as to its effect on one's ability to perform balance field sobriety tests.

Appellant misplaces reliance on *Battle v. Thornton*, where we said, "[e]ven in medical malpractice actions we have held that 'a physician need not be a specialist in the field of which he [or she] speaks in order to testify as an expert.'" 646 A.2d 315, 322 n.8 (D.C. 1994) (quoting *Ornoff v. Kuhn & Kogan Chartered*, 549 A.2d 728, 732 (D.C. 1988)) (brackets in original). Appellant concedes that McGarry was "unqualified to make a *diagnosis* of a pinched nerve," but argues that this fact goes to the weight of his testimony rather than to its admissibility. Appellant blurs the relaxed requirement, reiterated in *Battle*, that a physician need not be a specialist in a particular field, provided the physician "is familiar with the

medical procedure at issue," into a rule that would permit anyone with a basic anatomy education to render medical opinions. *Id*. While a physician need not be a specialist, he or she must still be a qualified physician and have familiarity with the particular subject matter in order to render an expert medical opinion. Here, McGarry lacks such qualifications as a physician with familiarity of lower back injuries. McGarry testified that "[a]s a pharmacist, [he] can describe treatments for it but [he] can't diagnose [a back injury] in a person." We have repeatedly recognized that "a trial judge is not obliged to qualify a proffered expert when there are articulable reasons to doubt his competency." *Johnson*, 728 A.2d at 74 (quoting *Glorious Food, Inc.*, 648 A.2d at 948). Based on the absence of qualifications, the trial court did not err in limiting McGarry's testimony on this subject.

## III.

This court reviews a trial court's decision to deny a § 23-110 motion without a hearing for abuse of discretion. *Bethea v. United States*, 170 A.3d 192, 194 (D.C. 2017). While "the statute creates a presumption that a hearing should be held" on the merits, *Long v. United States*, 910 A.2d 298, 308 (D.C. 2006) (quoting *Newman v. United States*, 705 A.2d 246, 261 (D.C. 1997)), a hearing is

unnecessary if the claims "(1) are palpably incredible; (2) are vague and conclusory; or (3) even if true, do not entitle the movant to relief." *White v. United States*, 146 A.3d 101, 109 (D.C. 2016) (quoting *Hardy v. United States*, 988 A.2d 950, 961 (D.C. 2010)). "Under the last of those three categories, 'if no genuine doubt exists about the facts that are material to the motion, the court may conclude that no evidentiary hearing is necessary.'" *Bellinger v. United* States, 127 A.3d 505, 515 (D.C. 2015) (quoting *Ginyard v. United States*, 816 A.2d 21, 38 (D.C. 2003)). To uphold a trial court's denial of a hearing, we "must conclude that under no circumstances could [appellant] establish facts warranting relief." *Freeman v. United States*, 971 A.2d 188, 201 (D.C. 2009) (quoting *Wright v. United States*, 608 A.2d 763, 766 (D.C. 1992)) (brackets in original).

On appeal, appellant argues the trial court abused its discretion by not holding a hearing on his § 23-110 claims that trial counsel was ineffective for failing to secure and present the testimony of his treating physician, Dr. Kannan. He asserts the treating physician would have testified that: (1) appellant has a number of medical conditions that likely would have affected appellant's ability to perform the field sobriety tests and exit his vehicle without pulling himself out, (2) appellant's vertigo may have caused nystagmus observed by the arresting officer, and (3) appellant's hiatal hernia/GERD provides an alternative reason for his

inability to perform the breathalyzer test, other than blatant refusal.

The trial court resolved each of these issues without a hearing, finding that even if the proposed testimony were true, it would not entitle appellant to relief. Because the trial court accepted the content of the affidavit as true, there is no factual dispute for the trial court to resolve. Accordingly, under circumstances like those here, where appellant fails to "identify any material factual issue that require[s] an evidentiary hearing to resolve," a hearing is unnecessary. *Ginyard*, 816 A.2d at 38.

We next consider appellant's ineffective assistance of counsel claim. To succeed on an ineffective assistance of counsel claim, appellant must "show that his trial counsel's representation was deficient, and that [that] deficient performance prejudiced [appellant's] defense." *Bellinger*, 127 A.3d at 515. To establish deficiency, trial counsel must have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Thomas v. United States*, 50 A.3d 458, 474 (D.C. 2012) (quoting *Zanders v. United States*, 678 A.2d 556, 569 (D.C. 1996)). The prejudice prong calls for a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Long*, 910 A.2d at 310 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). As it is not necessary "to address both components of the inquiry if the defendant makes an insufficient showing on one," the trial court may properly deny an ineffectiveness claim if it concludes that appellant's showing of either deficient performance or prejudice is insufficient. *Strickland*, 466 U.S. at 697.

We are satisfied appellant cannot demonstrate prejudice. The trial court did not attach dispositive weight to the field sobriety tests or the officer's observations regarding appellant's performance of those tests. Instead, the trial court made explicitly clear that while there is "some weight to be given to field sobriety tests," those tests "are certainly not the only factor upon which [the] court relied[]." Rather, the trial court described, at length, the other factors upon which it based its ruling, including the multiple driving violations appellant committed in the short timeframe Officer Carll was following him, the strong smell of alcohol emanating from appellant, and appellant's bloodshot and watery eyes.

The trial court also weighed other factors, including the fact that when he was pulled over, appellant did not know the time of day, appellant had difficulty producing his registration, and appellant attempted to mislead Officer Carll as to how much he had to drink, claiming first he had only one drink and later

acknowledging he had had three drinks. In addition to Officer Carll's testimony, the trial court credited the testimony of Officer Leonard who described appellant as combative at the station and smelling of alcohol, thereby corroborating Officer Carll's observations.

Thus, even if appellant's treating physician had testified to his medical conditions and the effects those conditions *could* have on the field sobriety tests or his inability to perform the breathalyzer test, we conclude that under no circumstances would the treating physician's testimony "establish facts warranting relief." *Freeman*, 971 A.2d at 201; *Cf. Bethea*, 170 A.3d at 196 (abuse of discretion where trial court found witness's affidavit, even if true, would warrant no relief, though witness "could have testified that the government's sole eyewitness to the murder could not have seen what she said she saw"). Therefore, appellant has failed to demonstrate prejudice.

For the aforementioned reasons, the judgment of the court is hereby

*Affirmed*.